IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

MELINDA BEAZLEY PEARSON,        )
                                )
     Plaintiff,                 )
                                )   Civil Action File
vs.                             )   No. 1:14-CV-110
                                )
AUGUSTA GEORGIA, et al.,        )
                                )
     Defendants.                )
_____ )


- - - - -

DEPOSITION OF TAMEKA ALLEN

Taken By Counsel For the Plaintiff

Before Gina L. Smith, Certified Court Reporter

At Prestige Reporting, 2603 Commons Boulevard,

Suite B, Augusta, Georgia 30901

On May 29, 2015, Commencing at 10:00 a.m.

- - - - -

MELINDA BEAZLEY PEARSON vs. AUGUSTA GEORGIA, ET AL.
Tameka Allen on 05/29/2015                          Page 2

```
                    APPEARANCES OF COUNSEL


For the Plaintiff:          Mr. John P. Batson
                            Attorney at Law
                            1104 Milledge Road
                            Augusta, Georgia  30904
                            jbatson@aol.com


For the Defendant:          Ms. Jody Smitherman
                            Augusta Georgia Law Department
                            520 Greene Street
                            Augusta, Georgia 30901
                            Jsmitherman@augustaga.gov


Also Present:               Ms. Melinda B. Pearson
                            Plaintiff


                        - - - - -

                    INDEX TO DEPOSITION
                                                 Page

EXAMINATION BY MR. BATSON . . . . . . . . . . . . . . . 3

CERTIFICATE OF COURT REPORTER . . . . . . . . . . . . 22


                        - - - - -

                    INDEX TO EXHIBITS
                                                 Page
Plaintiff's

Exhibit 1  5-7-12 Appeal notification Melinda Pearson
           (14 pp) . . . . . . . . . . . . . . . . . 12

Exhibit 2  Section 200.014 Honesty Code (1 pg)  . . . . . 14

Exhibit 3  5-8-12 IT Memo to Tameka Allen from Mike
           Blanchard (1 pg . . . . . . . . . . . . . . 15

Exhibit 4  5-15-12 IT Memo to Tameka Allen from Debbie
           Freeman (1 pg) . . . . . . . . . . . . . . . 15

Exhibit 5  5/23/12 Response from Fred Russell to William
           Shanahan (4 pp) . . . . . . . . . . . . . . 20
```

```
 1                    DEPOSITION OF
 2                    TAMEKA ALLEN
 3         [Pursuant to O.C.G.A. 9-11-28(d), Prestige
 4    Reporting has no contract with any of the parties or
 5    their counsel.  The court reporter's charges are the
 6    usual and customary charges for services within the
 7    industry and are available upon request by either
 8    party, with no financial or services discount being
 9    given to any party named in this litigation.]
10         [Plaintiff's Exhibits 1 through 5 are marked for
11    identification by the court reporter prior to
12    commencement of the deposition.]
13         [The witness is duly sworn by the court reporter.]
14         MR. BATSON:  This deposition is taken pursuant to
15    agreement of counsel and all terms and conditions of
16    this deposition are similar to the others in the case.
17         MS. SMITHERMAN:  Yes.
18                    - - - - -
19                    TAMEKA ALLEN,
20    Having Been First Duly Sworn, was Examined
21              and Testifies as Follows:
22                    EXAMINATION
23    BY MR. BATSON:
24    Q.   Could you state your name for the record, please.
25    A.   Tameka Allen.
```

MELINDA BEAZLEY PEARSON vs. AUGUSTA GEORGIA, ET AL.
Tameka Allen on 05/29/2015                                    Page 4

1      Q.   And what is your position?

2      A.   I am the information technology director.

3      Q.   How long have you been that?

4      A.   Approximately a little over 13 years.

5      Q.   How big was the department when you started?

6      A.   Probably I'd have to estimate about thirty-

7   something or more.

8      Q.   How many employees now?

9      A.   Roughly around 46 positions.

10     Q.   So what has been your department's policy with

11  respect to comp time or whatever you want to call it, time

12  where you would let employees take time even though they'd

13  still be paid, to compensate them for extra time worked?

14     A.   What would be the --

15     Q.   Policy or practice.

16     A.   The practice.

17     Q.   Did you have that -- did you grant comp time?  Did

18  you keep track of time that people worked more than 37.5

19  hours a week?

20     A.   In accordance to the policies if a person was an

21  hourly employee, you know, they would monitor their time or

22  overtime, what-have-you.  Anything outside of that, because

23  we rarely -- we really didn't have a lot of exempt employees

24  in our department.

25     Q.   There's been some discussion in the case about

```
 1   what some people call Tameka days when you might let people

 2   have a compensated day off like around Christmas or New

 3   Years or after a big project or something.

 4        A.   Uh-huh.

 5        Q.   Is that the case?

 6        A.   Very rarely the employees did get a Tameka Day,

 7   and that was more for morale building for, just like you

 8   said, doing a great job during the year.  And they were

 9   allowed to do that.

10        Q.   And how many employees do you have who you would

11   consider to be exempt?

12        A.   At that time --

13        Q.   Well, I mean just go ahead and break it down now

14   and then I'll ask you.

15        A.   Well, those -- you have to say it separately

16   because that just changed in regard to exemption.  HR just

17   made some changes within the last year for all employees or

18   the ones that were non-exempt.  So we may have had at the

19   time -- three of four years or so ago we may have had maybe

20   three people that were exempt.

21        Q.   So during 2015 HR has come to you and said I think

22   this employee, that employee, they're also exempt; something

23   like that?

24        A.   During 2014, latter part of 2014.

25        Q.   Who were those employees who were told they are
```

```
 1    now exempt?

 2         A.    Those would be the project managers.

 3         Q.    How did you get notified that HR was going to do

 4    that or they might do that?

 5         A.    It was actually a discussion with me as well as

 6    HR.  Looking at their positions, reviewing their positions,

 7    and they reviewed the positions to actually state whether or

 8    not those positions qualified to be exempt or non-exempt.

 9    So it was a review of those actual positions because we

10    looked at some of the job duties and made an assessment that

11    they should have been exempt.

12         Q.    Did you go back and punish them for any comp time

13    that they had taken in the past after you made that decision

14    that they should be exempt?

15         A.    None of them would have had comp time in the past.

16    If they had comp time in the past, it would have been in

17    order because they were hourly employees as opposed to

18    exempt employees.  As exempt employees, they would not get

19    any comp time.

20         Q.    Okay.  If the test is the function of what they

21    do, did their function change between the day before you

22    made the decision and the day after you made the decision to

23    call them exempt?

24         A.    Did -- I'm not --

25         Q.    Did their job duties or functions change --
```

1        A.    Their job duties were modified to a certain

2    degree.  I would not say the major function changed, but the

3    job descriptions were changed to a certain degree.

4        Q.    Okay.  And but you didn't go back -- had you ever

5    had a review like that before with HR saying these people

6    may be exempt or they may not be exempt as to those

7    positions?

8        A.    They looked at all of our positions a long time

9    ago, quite some time ago, and they said we will get back to

10   -- at that time they did not say they were exempt.  It was

11   not a decision made to whether or not the positions were

12   exempt or non-exempt.

13       Q.    And --

14       A.    But we had had discussions to whether or not they

15   would be exempt and when HR --

16       Q.    How long ago was it that somebody said, well,

17   maybe we better look into this, maybe they're exempt, maybe

18   they aren't?  Apparently there was some discussion a long

19   time --

20       A.    Uh-huh.

21       Q.    -- ago in the past that said maybe they are, maybe

22   they aren't.  When was that?

23       A.    I would say probably about over a year or so ago.

24   I don't recall exactly when but it was maybe a year, two

25   years ago.  It was different administration in HR at the

1    time.

2         Q.   Was Shanahan there?

3         A.   No, he was not.  Not in that capacity in HR.

4         Q.   So I'm a little confused on the timing of when it

5    was that -- when did a change occur, January 1st, 2015?

6         A.   When did the change occur in their exemption?

7         Q.   Yes.

8         A.   The latter part of 2014.

9         Q.   And when was it then that before that you said

10   that HR had discussed possibly changing -- making some

11   changes?

12        A.   Probably latter part or early part of -- I'm not

13   sure, but it was -- actually I instigated the discussion on

14   it.

15        Q.   And when was that?

16        A.   I can't recall.  I can't recall when it was.  I

17   mean we've had discussions on a number of positions.  I

18   don't recall when we exactly talked about that.

19        Q.   So at any rate, so you're saying latter part of

20   2014 --

21        A.   Uh-huh.  Actually probably went in effect in early

22   part of 2015.  I think it went in effect the first pay

23   period in January 2015.

24        Q.   Okay.  And do you know whether you specifically

25   made changes to their job function that definitely made them

```
 1   exempt versus non-exempt?
 2        A.   There were some changes to the job description,
 3   not necessarily to the overall major function of the
 4   position.
 5        Q.   But at any rate, you made this change and you
 6   didn't go back and punish them for any comp time that they
 7   had taken before the change?
 8        A.   It wouldn't be any need to punish them because the
 9   were classified as non-exempt.
10        Q.   Was there official --
11        A.   It wasn't anything that was their fault or
12   anything that they got reclassified.
13        Q.   Was there some document that said you're not --
14   you are a non-exempt employee or?
15        A.   When this action place in 2014, yes, the HR
16   department did receive memorandums.  All of the project
17   managers actually received it.  Their titles changed from
18   project leaders to project managers.  That was one
19   modification.  And upon doing all that, they were given
20   sufficient notice from human resources and information
21   technology, as well as myself.
22        Q.   So the process by which you instituted this change
23   was to evaluate, make the decision, and give them notice
24   that you are now an exempt employee and you don't get comp
25   time?
```

```
 1        A.   Notice that you were an exempt employee.
 2        Q.   Right.  And did you also tell them, as an exempt
 3   employee you won't get comp time?
 4        A.   As an exempt employee you don't get comp time or
 5   no overtime.
 6        Q.   And you gave them notice to that effect?
 7        A.   Oh, yes.  They all had proper notice.  Human
 8   resources reached -- well, all that was properly done.
 9        Q.   But you didn't retroactively go back and punish
10   them for anything?
11        A.   No.
12        Q.   So before late 2014, those three employees did
13   what they did --
14        A.   Uh-huh.
15        Q.   -- and then you say there were some minor changes,
16   at least minor changes to their job title but functionally
17   they pretty much do the same thing?
18        A.   They were still managing projects, yes.  The
19   project leaders were now project managers.
20        Q.   Okay.  And prior to 2012 were they called project
21   leaders?
22        A.   Yes.
23        Q.   And they were called project leaders clear up to
24   late 2014?
25        A.   Correct.
```

1      Q.   And during that period they did get comp time
2   and/or overtime?
3      A.   Whatever was applicable by the policies and
4   procedures, yes, because they were non-exempt employees at
5   that time.
6      Q.   So did your department sometimes pay overtime?
7      A.   If an employee was non-exempt.  Because it was
8   within the policies and procedures and FLSA, you know, they
9   have to be compensated fairly.
10     Q.   Do you happen to know how many hours somebody has
11  to accumulate before they have to be paid overtime?
12     A.   40 hours.  And Pam did a good job of making sure
13  it was 40 hours before they get it.
14     Q.   So what I'm asking is, was it regularly -- if
15  anybody went over 40 hours in your department, did they get
16  paid time and a half or were they awarded comp time at time
17  and a half for somebody who worked over 40 hours.
18     A.   If they are a non-exempt employee in accordance to
19  the policies and procedures, if they worked over a certain
20  amount of hours or the threshold of hours to constitute
21  overtime or comp time, they were allotted that time.
22     Q.   Allotted versus paid time and a half.  What I'm
23  trying to get at is the difference between letting employees
24  have comp time off to compensate for overtime versus
25  actually paying them time and a half for each hour over

1   forty hours.

2       A.   It would depend on how they claimed that time.

3   You could actually at that time put in comp time or you

4   could put in overtime.

5       Q.   Okay.  Now, did you -- I used the word pay.  If

6   somebody wanted to take comp time, did you pay comp time

7   back at time and a half for overtime?

8       A.   Whatever the policy permitted.  I didn't get to

9   the specifics of how the comp time was allotted.

10      Q.   Okay.  So that would have been payroll?

11      A.   Yes.

12      Q.   Were you provided any information about Melinda

13  Pearson's appeal of the allegations against her by the rec

14  department or by Mr. Shanahan?  Were you given any

15  documents, review any documents?

16      A.   I don't recall.  I remember a discussion or

17  something with Ms. Freeman around back a long time ago.

18  Other than that, I don't recall getting anything.

19      Q.   Go ahead and take a look at Exhibit 1.

20      A.   Okay.

21      Q.   Were you ever given a copy of what we've marked as

22  Exhibit 1?

23      A.   I don't recall getting a copy of this.

24      Q.   Now, did anybody ever talk to you about the

25  question of whether Mike Blanchard was giving employees off

1   on Fridays?

2       A.   I don't recall.  Like I said, I barely recall a

3   conversation with Ms. Freeman a long time ago about

4   something.  But I don't recall.

5       Q.   Who is Mike Blanchard, for the record?

6       A.   Mike Blanchard is the deputy director of

7   information technology.

8       Q.   How long has he been deputy director?

9       A.   I want to say it may be about 14/13 years.

10      Q.   Do you have more than one deputy director?

11      A.   I have two deputy directors.

12      Q.   Who is the other?

13      A.   Gary Hewett.

14      Q.   Could you spell that last name?

15      A.   H-E-W-E-T-T.

16      Q.   How long has he been a deputy director?

17      A.   Probably about the same time.

18      Q.   When is the last time you had given out what you

19   refer to or what we call a Tameka day?

20      A.   I don't recall.  Maybe four years ago.  Three or

21   four years ago.

22      Q.   Was that -- did you have authority to do that

23   under any specific part of the City policy manual?

24      A.   I don't think there was anything that prohibited

25   it.  In that policy that was the previous policy, however I

1    had discussion with Mr. Russell who was aware of it.

2         Q.   And Russell left in about when?

3         A.   In the end of 2013.

4         Q.   So do you recall about when your discussions were

5    with Mr. Russell about that?

6         A.   That would have had to have been years ago.  Four,

7    probably over four years ago.

8         Q.   Do you recall whether it was before or after

9    Melinda got demoted and/or Beck was terminated?

10        A.   I'm not sure.  When was Ms. Pearson --

11        Q.   2012, spring of 2012.

12        A.   It would have been before that.

13        Q.   A couple of years before, two years, three years,

14   four years?

15        A.   Well, four years from that ago would probably be

16   2010/2011.

17        Q.   So a year or two before the Beck thing and --

18        A.   Uh-huh.

19        Q.   -- the thing in 2012?

20        A.   Uh-huh.

21             MS. SMITHERMAN:  For the record, if you could try

22        to say yes or no.

23        A.   Yes.  I'm sorry.

24        Q.   [Mr. Batson]  Would you turn to Exhibit 2.  Are

25   you aware that there is an honesty code for the City of

```
 1   Augusta?

 2        A.   Based on what I'm reviewing now, I assume there

 3   was.

 4        Q.   Could you turn to Exhibit 3 and 4.

 5        A.   Uh-huh.

 6        Q.   Do you remember ever having seen these before?

 7        A.   Yes, I do.

 8        Q.   Did you write these memos?

 9        A.   No.   These memos are written to me.

10        Q.   I guess it was from Mike Blanchard; right?

11        A.   One was from Michael Blanchard and one was from

12   Debbie Freeman.

13        Q.   And what did you do after you received the first

14   one after you received Exhibit 3?

15        A.   I couldn't -- I can't recall.  I couldn't tell

16   you.  This was over three years ago.

17        Q.   Do you recall what else happened after or in

18   connection with Exhibit 3, anything?

19        A.   No.

20        Q.   If you would, look at Exhibit 4.  Do you remember

21   receiving this, Exhibit 4?

22        A.   Yes.

23        Q.   Do you recall what actions occurred after you

24   received Exhibit 4?

25        A.   I do not.
```

```
 1       Q.   Did you ever ask Debbie Freeman whether she wrote
 2   this statement?
 3       A.   I did not.  I don't recall asking her that.
 4       Q.   Let's go back to Exhibit 3.  Do you know whether
 5   Mike Blanchard ever gave people days off?
 6       A.   Not that I'm aware of.
 7            MR. BATSON:  Hold on a second.
 8            [Brief recess.]
 9       Q.   [Mr. Batson]  If you gave a Tameka day, how were
10   records kept about that for the employees?  Did they put
11   down 7.5 on their time sheet for that day so that they would
12   get paid for it or how did you -- what was the nomenclature
13   for those kinds of days?
14       A.   Normally the employees would mark it on their time
15   card that it was a Tameka day, a TD, or something that
16   signified that it was a day that they were getting.
17       Q.   But then for the record that went down to payroll
18   so payroll would pay them for that day, what did they put on
19   that timecard?
20       A.   That's what I'm saying, that's what they would put
21   on the timecard.
22       Q.   And so that would substitute for saying 7.5 but
23   they would still be paid for that day?
24       A.   Yes.
25       Q.   And if they put a TD on the top copy -- the top
```

```
 1   copy is white?

 2        A.   I'm not sure because as a director all I signed

 3   was the barcode paper that came with the total hours for the

 4   department.

 5        Q.   Did you have them make sure that the TD went all

 6   the way through to all three copies or do you know?

 7        A.   I'm not sure.  I'm not sure.

 8        Q.   Who might know about that?

 9        A.   The administrative assistant.

10        Q.   And that's who?

11        A.   Renetta Rigdon.

12        Q.   Do you know whether Betty Griffin in payroll had

13   ever talked to you about how to do the nomenclature for

14   Tameka days?

15        A.   No, I don't recall ever talking to Ms. Griffin.

16        Q.   She might have talked directly to Ms. Rigdon;

17   right?

18        A.   I'm not sure.  But I don't recall her coming and

19   talking to me directly.

20        Q.   Did you ever have any conversations with Mr.

21   Shanahan about Ms. Pearson?

22        A.   I don't recall having any.

23        Q.   Did Mr. Shanahan ever have any discussions with

24   you about Mr. Beck?

25        A.   In regards to what?
```

1      Q.    About anything.

2      A.    I wouldn't recall direct conversations, but, of

3  course, me being the deputy and him being the deputy, there

4  were conversations at that time.

5      Q.    What if anything can you recall?

6      A.    I really can't.

7      Q.    Do you know whether Mr. Shanahan was aware that

8  sometimes you would award Tameka days?

9      A.    I'm not sure.

10     Q.    About how many a year would you award, would you

11 know?  Would it vary year to year?

12     A.    Maybe one a year because it's normally around the

13 holiday, Christmas.

14     Q.    Did you try to get them approved before each year?

15 Did you go to a City administrator or assistant City

16 administrator each year and say I'm going to go ahead and

17 award a Tameka day for whatever day?

18     A.    I don't recall each year me and Fred having -- me

19 and the administrator having that conversation.  But we've

20 had the conversation.

21     Q.    Did you ever give it for attending -- for your

22 employees attending a workshop on say a weekend or

23 something?

24     A.    They would get compensated based on them working,

25 if it was -- like if we have a retreat or something that was

 1    working outside, they would get a day off for coming in for

 2    that day because that's not their normal work day.

 3         Q.    Okay.

 4         A.    So it was compensating working on a non-workday,

 5    you would get --

 6         Q.    Would you classify that kind of time off as a

 7    Tameka day or something else?

 8         A.    No, that was not a Tameka day.

 9         Q.    How would you classify that?

10         A.    They would get additional hours accordingly in

11    regards to being off that Saturday -- I mean working that

12    Saturday.  Because when we did it it was a non-working day.

13         Q.    But how would you classify that?

14         A.    They would take off a day and go through the

15    administrative assistant for their retreat day.  It was like

16    a retreat.  When we have our IT retreat they would call it a

17    retreat day so when they worked, they came in that Saturday

18    and they had an opportunity to take a day off to compensate

19    for working that Saturday.

20         Q.    And they would get paid during the day that they

21    took off?

22         A.    Yes.

23         Q.    But in essence, they wouldn't get paid for the day

24    that they were at the workshop or retreat?

25         A.    They would get paid -- no, they wouldn't because

```
 1   that was not a work day, so, no.

 2        Q.   It was a swap out of a day?

 3        A.   Exactly.  As long as it's in that same pay period

 4   and that's within the policy.  You take off, it's like a

 5   flex time.  You work that day, you're off that day.  It had

 6   to be in the same pay period.

 7             MR. BATSON:  Let me check with Melinda.

 8             [Brief recess.]

 9        Q.   [Mr. Batson]  If you would, look at Exhibit 5, and

10   if you would turn to the page that's marked down on the

11   bottom 588.  The paragraph that's highlighted.  Do you

12   recall ever receiving, first of all, this document which is

13   Exhibit 5 or any of the attachments that are referenced on

14   588 in paragraph B, 5B?

15        A.   I don't recall.

16        Q.   And by that are you -- I take it to mean you did

17   not get copies of any of the documents that Ms. Pearson had

18   submitted in her appeal?

19        A.   I don't recall getting any of them because it

20   wouldn't have been normal policy to provide it to me.

21        Q.   And you didn't have any special conversations in

22   May or April of 2012 with either Shanahan or Russell about

23   Ms. Pearson?

24        A.   I don't recall having any.

25        Q.   When you say you don't recall it are you saying
```

```
 1   affirmatively you're pretty sure they did not talk to you

 2   about Ms. Pearson in April or May?

 3        A.   I'm saying I don't recall them talking to me in

 4   April or May.  I mean you're talking about over three years

 5   ago.  I don't recall.  I'm not saying they did not, but I

 6   don't recall that.

 7        Q.   Okay.

 8             MR. BATSON:  That's all.

 9             [Deposition concludes at 10:37 a.m.]

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //
```

MELINDA BEAZLEY PEARSON vs. AUGUSTA GEORGIA, ET AL.
Tameka Allen on 05/29/2015                                      **Page 22**

                    CERTIFICATE OF COURT REPORTER

        I hereby certify that the foregoing deposition was
reported as stated in the caption by the method of Stenomask
and the questions and the answers thereto were reduced to
typewriting by me or under my direction; that the foregoing
pages numbered 3 through 21 represent a true, correct, and
complete transcript of the evidence given on May 29, 2015,
by the witness, TAMEKA ALLEN, and signature was reserved.

        I further certify that I am not kin or counsel to
the parties in the case and I am not in the regular employ
of counsel of said parties.

        I further certify that I have no contract with any
of the parties or their counsel.  The court reporting
charges are the usual and customary charges for services
within the industry and are available upon request by either
party.  No financial or services discount has been or will
be given to any party named in this litigation.

        This the 10th day of June, 2015.


                        _Gina L. Smith_

                        GINA L. SMITH, CCR, CVR

                        CERTIFIED COURT REPORTER

                        GEORGIA CERTIFICATE # B-2151

SIGNATURE PAGE

   I, Tameka Allen, do hereby certify that I have read
my deposition given before Gina L. Smith on May 28, 2015.

____ 1)   Said deposition is correct as is and requires no
changes.

____ 2)   I have listed on the following page(s) the changes
I wish incorporated into my deposition.


   WITNESS my hand and seal this the _____ day of
_____, 2015


                    _____

                    TAMEKA ALLEN

```
                 ERRATA TO THE DEPOSITION OF

                        TAMEKA ALLEN

_____COUNTY, GEORGIA


     I DO HEREBY CERTIFY that I have read the foregoing

deposition and the following corrections are required as a

result of the transcription thereof:

PAGE/LINE      CORRECTION/REASON


              _____

              _____

              _____











     This the ____ day of _____, 2015


                   _____
                   TAMEKA ALLEN
```

MELINDA BEAZLEY PEARSON vs. AUGUSTA GEORGIA, ET AL.
Tameka Allen on 05/29/2015                    Index: 1..attachments

**Exhibits**

AllenT 1  2:0
  3:10
  12:19,22

AllenT 2  2:0
  14:24

AllenT 3  2:0
  15:4,14,18
  16:4

AllenT 4  2:0
  15:20,21,
  24

AllenT 5  2:0
  20:9,13

―――――――――
**1**
―――――――――

1  3:10
  12:19,22

10:37  21:9

13  4:4

14/13  13:9

1st  8:5

―――――――――
**2**
―――――――――

2  14:24

2010/2011
  14:16

2012  10:20
  14:11,19
  20:22

2013  14:3

2014  5:24
  8:8,20
  9:15
  10:12,24

2015  5:21
  8:5,22,23

―――――――――
**3**
―――――――――

3  15:4,14,
  18 16:4

37.5  4:18

―――――――――
**4**
―――――――――

4  15:4,20,
  21,24

40  11:12,
  13,15,17

46  4:9

―――――――――
**5**
―――――――――

5  3:10
  20:9,13

588  20:11,
  14

5B  20:14

―――――――――
**7**
―――――――――

7.5  16:11,
  22

―――――――――
**9**
―――――――――

9-11-28(d)
  3:3

―――――――――
**A**
―――――――――

a.m.  21:9

accordance
  4:20 11:18

accumulate
  11:11

action  9:15

actions
  15:23

actual  6:9

additional
  19:10

administration
  7:25

administrative
  17:9 19:15

administrator
  18:15,16,
  19

affirmatively
  21:1

agreement
  3:15

ahead  5:13
  12:19
  18:16

allegations

12:13

Allen  3:2,
  19,25

allotted
  11:21,22
  12:9

allowed  5:9

amount  11:20

and/or  11:2
  14:9

Apparently
  7:18

appeal  12:13
  20:18

applicable
  11:3

approved
  18:14

Approximately
  4:4

April  20:22
  21:2,4

aren't  7:18,
  22

assessment
  6:10

assistant
  17:9 18:15
  19:15

assume  15:2

attachments
  20:13

MELINDA BEAZLEY PEARSON vs. AUGUSTA GEORGIA, ET AL.
Tameka Allen on 05/29/2015                    Index: attending..day

attending
 18:21,22

Augusta    15:1

authority
 13:22

award   18:8,
 10,17

awarded
 11:16

aware   14:1,
 25 16:6
 18:7

_____

          B
_____

back    6:12
 7:4,9 9:6
 10:9 12:7,
 17 16:4

barcode   17:3

barely   13:2

based   15:2
 18:24

Batson   3:14,
 23 14:24
 16:7,9
 20:7,9
 21:8

Beck    14:9,
 17 17:24

Betty   17:12

big   4:5 5:3

Blanchard

12:25
13:5,6
15:10,11
16:5

bottom   20:11

break    5:13

building   5:7

_____

          C
_____

call   4:11
 5:1 6:23
 13:19
 19:16

called
 10:20,23

can't   8:16
 15:15 18:6

capacity   8:3

card   16:15

case   3:16
 4:25 5:5

change   6:21,
 25 8:5,6
 9:5,7,22

changed   5:16
 7:2,3 9:17

changing
 8:10

charges   3:5,
 6

check   20:7

Christmas

5:2 18:13

City   13:23
 14:25
 18:15

claimed   12:2

classified
 9:9

classify
 19:6,9,13

clear   10:23

code   14:25

commencement
 3:12

comp   4:11,
 17 6:12,
 15,16,19
 9:6,24
 10:3,4
 11:1,16,
 21,24
 12:3,6,9

compensate
 4:13 11:24
 19:18

compensated
 5:2 11:9
 18:24

compensating
 19:4

concludes
 21:9

conditions
 3:15

confused   8:4

connection
 15:18

constitute
 11:20

contract   3:4

conversation
 13:3
 18:19,20

conversations
 17:20
 18:2,4
 20:21

copies   17:6
 20:17

copy   12:21,
 23 16:25
 17:1

Correct
 10:25

couldn't
 15:15

counsel   3:5,
 15

couple   14:13

court   3:5,
 11,13

customary
 3:6

_____

          D
_____

day   5:2,6

MELINDA BEAZLEY PEARSON vs. AUGUSTA GEORGIA, ET AL.
Tameka Allen on 05/29/2015                    Index: days..fairly

6:21,22
13:19
16:9,11,
15,16,18,
23 18:17
19:1,2,7,
8,12,14,
15,17,18,
20,23
20:1,2,5

days  5:1
16:5,13
17:14 18:8

Debbie  15:12
16:1

decision
6:13,22
7:11 9:23

degree  7:2,3

demoted  14:9

department
4:5,24
9:16 11:6,
15 12:14
17:4

department's
4:10

depend  12:2

deposition
3:1,12,14,
16 21:9

deputy  13:6,
8,10,11,16
18:3

description
9:2

descriptions
7:3

didn't  4:23
7:4 9:6
10:9 12:8
20:21

difference
11:23

direct  18:2

directly
17:16,19

director  4:2
13:6,8,10,
16 17:2

directors
13:11

discount  3:8

discussed
8:10

discussion
4:25 6:5
7:18 8:13
12:16 14:1

discussions
7:14 8:17
14:4 17:23

document
9:13 20:12

documents
12:15
20:17

don't  7:24
8:18 9:24
10:4
12:16,18,
23 13:2,4,
20,24 16:3
17:15,18,
22 18:18
20:15,19,
24,25
21:3,5,6

duly  3:13,
20

duties  6:10,
25 7:1

—————————
        E
—————————

early  8:12,
21

effect  8:21,
22 10:6

employee
4:21 5:22
9:14,24
10:1,3,4
11:7,18

employees
4:8,12,23
5:6,10,17,
25 6:17,18
10:12
11:4,23
12:25
16:10,14
18:22

end  14:3

essence
19:23

estimate  4:6

evaluate
9:23

EXAMINATION
3:22

Examined
3:20

exempt  4:23
5:11,20,22
6:1,8,11,
14,18,23
7:6,10,12,
15,17 9:1,
24 10:1,2,
4

exemption
5:16 8:6

Exhibit
12:19,22
14:24
15:4,14,
18,20,21,
24 16:4
20:9,13

Exhibits
3:10

extra  4:13

—————————
        F
—————————

fairly  11:9

MELINDA BEAZLEY PEARSON vs. AUGUSTA GEORGIA, ET AL.
Tameka Allen on 05/29/2015                    Index: fault..made

fault   9:11

financial
   3:8

flex   20:5

FLSA   11:8

forty   12:1

Fred   18:18

Freeman
   12:17  13:3
   15:12  16:1

Fridays   13:1

function
   6:20,21
   7:2  8:25
   9:3

functionally
   10:16

functions
   6:25

---
G
---

Gary   13:13

gave   10:6
   16:5,9

give   9:23
   18:21

giving   12:25

good   11:12

grant   4:17

great   5:8

Griffin

17:12,15

guess   15:10

---
H
---

H-e-w-e-t-t
   13:15

half   11:16,
   17,22,25
   12:7

happen   11:10

happened
   15:17

Hewett   13:13

highlighted
   20:11

Hold   16:7

holiday
   18:13

honesty
   14:25

hour   11:25

hourly   4:21
   6:17

hours   4:19
   11:10,12,
   13,15,17,
   20  12:1
   17:3  19:10

HR   5:16,21
   6:3,6  7:5,
   15,25  8:3,
   10  9:15

human   9:20
   10:7

---
I
---

identification
   3:11

industry   3:7

information
   4:2  9:20
   12:12  13:7

instigated
   8:13

instituted
   9:22

it's   18:12
   20:3,4

I'd   4:6

I'll   5:14

I'm   6:24
   8:4,12
   11:14,22
   14:10,23
   15:2  16:6,
   20  17:2,7,
   18  18:9,16
   21:3,5

---
J
---

January   8:5,
   23

job   5:8
   6:10,25
   7:1,3  8:25

9:2  10:16
11:12

---
K
---

kind   19:6

kinds   16:13

---
L
---

late   10:12,
   24

leaders   9:18
   10:19,21,
   23

left   14:2

letting
   11:23

Let's   16:4

litigation
   3:9

long   4:3
   7:8,16,18
   12:17
   13:3,8,16
   20:3

looked   6:10
   7:8

lot   4:23

---
M
---

made   5:17
   6:10,13,22
   7:11  8:25

MELINDA BEAZLEY PEARSON vs. AUGUSTA GEORGIA, ET AL.
Tameka Allen on 05/29/2015                          Index: major..policy

9:5

major   7:2
9:3

make   9:23
17:5

making   8:10
11:12

managers   6:2
9:17,18
10:19

managing
10:18

manual   13:23

mark   16:14

marked   3:10
12:21
20:10

Melinda
12:12 14:9
20:7

memorandums
9:16

memos   15:8,9

Michael
15:11

Mike   12:25
13:5,6
15:10 16:5

minor   10:15,
16

modification
9:19

modified   7:1

monitor   4:21

morale   5:7

_____

N

_____

named   3:9

necessarily
9:3

nomenclature
16:12
17:13

non-exempt
5:18 6:8
7:12 9:1,
9,14 11:4,
7,18

non-workday
19:4

non-working
19:12

normal   19:2
20:20

notice   9:20,
23 10:1,6,
7

notified   6:3

number   8:17

_____

O

_____

O.C.G.A.   3:3

occur   8:5,6

occurred
15:23

official
9:10

opportunity
19:18

opposed   6:17

order   6:17

overtime
4:22 10:5
11:2,6,11,
21,24
12:4,7

_____

P

_____

paid   4:13
11:11,16,
22 16:12,
23 19:20,
23,25

Pam   11:12

paper   17:3

paragraph
20:11,14

part   5:24
8:8,12,19,
22 13:23

parties   3:4

party   3:8,9

past   6:13,
15,16 7:21

pay   8:22

11:6 12:5,
6 16:18
20:3,6

paying   11:25

payroll
12:10
16:17,18
17:12

Pearson
14:10
17:21
20:17,23
21:2

Pearson's
12:13

people   4:18
5:1,20 7:5
16:5

period   8:23
11:1 20:3,
6

permitted
12:8

person   4:20

place   9:15

Plaintiff's
3:10

policies
4:20 11:3,
8,19

policy   4:10,
15 12:8
13:23,25
20:4,20

MELINDA BEAZLEY PEARSON vs. AUGUSTA GEORGIA, ET AL..
Tameka Allen on 05/29/2015          Index: position..separately

| | | | |
|---|---|---|---|
| position   4:1 9:4 | provided 12:12 | 15,19,24, 25 21:3,5, 6 | reporter's 3:5 |
| positions 4:9 6:6,7, 8,9 7:7,8, 11 8:17 | punish  6:12 9:6,8 10:9 | receive   9:16 | Reporting 3:4 |
| | pursuant 3:3,14 | received 9:17 15:13,14, 24 | request   3:7 |
| possibly 8:10 | put  12:3,4 16:10,18, 20,25 | | resources 9:20 10:8 |
| practice 4:15,16 | _____ | receiving 15:21 20:12 | respect   4:11 |
| Prestige   3:3 | Q | | retreat 18:25 19:15,16, 17,24 |
| pretty  10:17 21:1 | qualified 6:8 | recess   16:8 20:8 | retroactively 10:9 |
| previous 13:25 | question 12:25 | reclassified 9:12 | review   6:9 7:5 12:15 |
| prior   3:11 10:20 | _____ R | record   3:24 13:5 14:21 16:17 | reviewed   6:7 |
| procedures 11:4,8,19 | rarely   4:23 5:6 | records 16:10 | reviewing 6:6 15:2 |
| process   9:22 | rate   8:19 9:5 | refer   13:19 | Rigdon 17:11,16 |
| prohibited 13:24 | reached  10:8 | referenced 20:13 | Roughly   4:9 |
| project   5:3 6:2 9:16, 18 10:19, 20,23 | rec   12:13 recall   7:24 8:16,18 12:16,18, 23 13:2,4, 20 14:4,8 | regard   5:16 regularly 11:14 | Russell 14:1,2,5 20:22 |
| projects 10:18 | 15:15,17, 23 16:3 | remember 12:16 15:6,20 | _____ S |
| proper  10:7 | 17:15,18, 22 18:2,5, | Renetta 17:11 | Saturday 19:11,12, 17,19 |
| properly 10:8 | 18 20:12, | reporter 3:11,13 | separately 5:15 |
| provide 20:20 | | | |

MELINDA BEAZLEY PEARSON vs. AUGUSTA GEORGIA, ET AL.
Tameka Allen on 05/29/2015      Index: services..what-have-you

services
    3:6,8

Shanahan    8:2
    12:14
    17:21,23
    18:7 20:22

sheet    16:11

signed    17:2

signified
    16:16

similar    3:16

SMITHERMAN
    3:17 14:21

special
    20:21

specific
    13:23

specifically
    8:24

specifics
    12:9

spell    13:14

spring    14:11

started    4:5

state    3:24
    6:7

statement
    16:2

submitted
    20:18

substitute
    16:22

sufficient
    9:20

swap    20:2

sworn    3:13,
    20

─────────────
         T
─────────────

talk    12:24
    21:1

talked    8:18
    17:13,16

talking
    17:15,19
    21:3,4

Tameka    3:2,
    19,25 5:1,
    6 13:19
    16:9,15
    17:14
    18:8,17
    19:7,8

TD    16:15,25
    17:5

technology
    4:2 9:21
    13:7

terminated
    14:9

terms    3:15

test    6:20

Testifies
    3:21

that's    16:20

17:10 19:2
20:4,10,11
21:8

There's    4:25

they'd    4:12

they're    5:22
    7:17

thing    10:17
    14:17,19

thirty-    4:6

threshold
    11:20

time    4:11,
    12,13,17,
    18,21
    5:12,19
    6:12,15,
    16,19 7:8,
    9,10,19
    8:1 9:6,25
    10:3,4
    11:1,5,16,
    21,22,24,
    25 12:2,3,
    6,7,9,17
    13:3,17,18
    16:11,14
    18:4 19:6
    20:5

timecard
    16:19,21

timing    8:4

title    10:16

titles    9:17

told    5:25

top    16:25

total    17:3

track    4:18

turn    14:24
    15:4 20:10

─────────────
         U
─────────────

Uh-huh    5:4
    7:20 8:21
    10:14
    14:18,20
    15:5

usual    3:6

─────────────
         V
─────────────

vary    18:11

versus    9:1
    11:22,24

─────────────
         W
─────────────

wanted    12:6

wasn't    9:11

week    4:19

weekend
    18:22

we've    8:17
    12:21
    18:19

what-have-you
    4:22

| | |
|---|---|
| **white**  17:1 | 20,21 |
| **won't**  10:3 | 14:6,7,13, |
| **word**  12:5 | 14,15 |
| **work**  19:2 | 15:16 21:4 |
|   20:1,5 | **you're**  8:19 |
| **worked**  4:13, |   9:13 20:5 |
|   18 11:17, |   21:1,4 |
|   19 19:17 | |
| **working** | |
|   18:24 | |
|   19:1,4,11, | |
|   19 | |
| **workshop** | |
|   18:22 | |
|   19:24 | |
| **wouldn't**  9:8 | |
|   18:2 | |
|   19:23,25 | |
|   20:20 | |
| **write**  15:8 | |
| **written**  15:9 | |
| **wrote**  16:1 | |

---

**Y**

---

**year**  5:8,17
  7:23,24
  14:17
  18:10,11,
  12,14,16,
  18

**years**  4:4
  5:3,19
  7:25 13:9,